RECEIPT NUMBER
*510560*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

23 pgs
Attach A+B

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND in its own right and as
subrogee and assignee of various
obligees and claimants,

                    Plaintiff,

v.

A-MAC SALES AND BUILDERS COMPANY,
a Michigan corporation, and ANDREW G.
MCLEMORE and DOROTHY MCLEMORE,
individually,

                    Defendant.
                                        /

JUDGE : Zatkoff, Lawrence P.
DECK  : S. Division Civil Deck
DATE  : 07/16/2004 @ 14:24:16
CASE NUMBER : 2:04CV72643
CMP FIDELITY AND DEPOSIT CO V.
A-MAC SALES (KC)

MAGISTRATE JUDGE R. STEVEN WHALEN

Mark M. Cunningham (P38408)
**KERR, RUSSELL AND WEBER, PLC**
Attorneys for Plaintiff
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313)961-0200
                                        /

U.S. DIST. COURT
EAST. DIST. MICH.
DETROIT-PSG

FILED

'04 JUL 16 P2:30

## COMPLAINT

   **NOW COMES** Fidelity and Deposit Company of Maryland, in its own right and as

subrogee and/or assignee of bond obligees and/or claimants (collectively "F & D"), by its

attorneys, KERR, RUSSELL AND WEBER, PLC, and for its Complaint against A-Mac

Sales and Builders Company ("A-Mac"), Andrew G. McLemore ("Andrew McLemore") and

Dorothy McLemore, states as follows:

### COMMON ALLEGATIONS

   1.      F & D is a Maryland insurance company organized and operating under the

laws of the State of Maryland with its principal place of business in the State of Maryland.

   2.      Defendant A-Mac is a Michigan corporation organized under the laws of the

KERR, RUSSELL
AND WEBER, PLC

{22395\313\DT080400.DOC;1}

State of Michigan and with its principal place of business in Wayne County, Michigan.

3.      Defendant Andrew McLemore is an individual who is a citizen of the State of Michigan and at all times known to F & D resided and continues to reside in Wayne County, Michigan.

4.      Defendant Dorothy McLemore is an individual who is a citizen of the State of Michigan and at all times known to F & D resided and continues to reside in Wayne County, Michigan.

5.      This court has jurisdiction over this cause under 28 U.S.C. §1332(a)(1) because the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00, and is between citizens of different states.

6.      Venue is proper in this court because all Defendants reside in this District and the causes of action set forth herein arose in this District.

7.      A-Mac entered into a construction contract (the "Contract") with the City of Detroit in the State of Michigan for the construction of a project known as the Jeffries West Apartments Building 502 – Modernization-Reconfiguration (the "Project").

8.      In connection with the Project, A-Mac was required, by the Contract and by the laws of the State of Michigan, in particular, MCLA §129.201 *et seq.* to provide payment and performance bonds issued by a surety authorized and qualified to do business in the State of Michigan.

9.      In connection with the Project, A-Mac applied to and requested from F & D payment and performance bonds in the nature and amount required by the Contract and the statues of the State of Michigan.

10.     In reliance upon an Agreement of Indemnity ("Indemnity Agreement")

KERR, RUSSELL
AND WEBER, PLC

(Exhibit A) executed by Andrew McLemore and Dorothy McLemore (sometimes collectively referred to as the "Indemnitors"), F & D, as surety, executed Payment and Performance Bond Nos. 6117787 (the "Bonds") in connection with the Project, copies of which are in the possession of Defendants.

11.    The existence and execution of the Indemnity Agreement was a condition precedent to F & D's agreement to issue the Bonds.

12.    Before it was able to complete the Project, A-Mac became unable to perform or complete the performance of the work or comply with its contractual obligations on the Project; became in default under the Contract for the Project; was unable to pay certain subcontractors and suppliers of labor and/or materials in connection with the Contract and the Project; and its Contract for the Project was terminated for cause by the owner of the Project.

13.    The Indemnity Agreement requires the Indemnitors to indemnify and hold F & D harmless from, among other things, all liability under the Bonds F & D issued on behalf of A-Mac.  The Indemnity Agreement provides, in part, the following:

### Indemnity

Second:    The Contractor and Indemnitors shall exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) by reason of having executed or procured the execution of the Bonds, (2) by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or (3) in enforcing any of the covenants and conditions of this Agreement.  Payment by reason of the aforesaid causes shall be made to the surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore.  Such payment

KERR, RUSSELL
AND WEBER, PLC

{22395\313\DT080400.DOC;1}                          3

shall be equal to the amount of the reserve set by the Surety.  In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

(Exhibit A.)

14.    The Indemnity Agreement also required the Indemnitors to post collateral upon F & D's demand.  (Exhibit A).

15.    Based upon A-Mac's default in connection with the Contract and the Project, as well as the Bonds, and A-Mac's failure to pay subcontractors and/or suppliers in connection with the Project constituting a further default in connection with the Contract, the Project and the Bonds, to date, F & D has been required to make the following payments:

A.    Payments to complete the work required by the Contract: $2,457,662.00.

B.    Payments to subcontractors and/or suppliers of A-Mac:

| | |
|---|---|
| Progressive Mechanical, Inc. | $262,915.69 |
| Partlan-Labadie Sheet Metal Co. | $37,700.00 |
| Di-Mar, Inc. | $190,636.89 |
| CSA Electric, Inc. | $110,995.20 |
| Scaffolding, Inc. | $14,700.00 |

These sums do not include engineering and legal fees, investigation expenses, travel

expenses and other expenses resulting from and arising out of the default of A-Mac, all of which exceed $100,000.00.

16.    As a result of receipt of certain remaining Contract balances, F & D has received the sum of $2,276,949.00 which it has applied to the losses caused by Indemnitors.

17.    F & D has made demand upon the Indemnitors for payment of the sums incurred by F & D but the Indemnitors have wholly failed and refused to indemnity and hold F & D harmless.

18.    F & D has also been subrogated to the rights of all those whom ht has paid, as more fully set forth in paragraph 15.

**COUNT I
(BREACH OF CONTRACT)**

19.    F & D incorporates by reference paragraphs 1 through 18 as though fully set forth here.

20.    Pursuant to the Indemnity Agreement, Indemnitors are obligated to indemnify F & D from all losses, costs, damages, attorneys fees, disbursements and expenses of every nature and to post collateral to cover F & D's Bond losses.

21.    Despite F & D's demand, the Indemnitors have breached the Indemnity Agreement by failing and refusing to indemnify and hold F & D harmless and failing to post collateral sufficient to protect F & D from losses which have already occurred and contingent bond exposure.

22.    F & D has been damaged by the Indemnitors' material breach of the Indemnity Agreement in an amount in excess of $880,000.00.

WHEREFORE, Fidelity and Deposit Company of Maryland prays that this court

KERR, RUSSELL
AND WEBER, PLC

enter a judgment in favor of F & D and against A-Mac, Andrew McLemore and Dorothy McLemore, jointly and severally, in an amount in excess of $880,000.00, together with interest, costs, expenses and attorneys fees, and grant such other and further relief as this court deems just and equitable.

## COUNT II
## (EXONERATION AND REIMBURSEMENT)

23.   F & D incorporates by reference the common allegations set forth in paragraphs 1 through 18 as though fully set forth here.

24.   F & D has demanded that the Indemnitors indemnify and hold it harmless from the claims paid and costs incurred by F & D in connection with the issuance of the Bonds in an amount in excess of $880,000.00.

25.   As the principal on the Performance and Payment Bonds, A-Mac owes F & D the duty of exoneration and reimbursement. Additionally, the Indemnity Agreement requires all of the Indemnitors to place funds or other security with F & D upon demand in an amount sufficient to cover F & D's bond exposure and/or loss.

26.   The Indemnitors have failed and refused to meet their obligations under the Indemnity Agreement by failing to indemnify F & D from the losses and to post collateral in an amount sufficient to secure F & D from loss.

27.   F & D is entitled to be reimbursed, including for its attorneys and consulting fees as well as all other expenses incurred in connection with and as a result of having issued the Bonds and to be fully collateralized by the Indemnitors. Unless the injunctive relief requested in Count IV below is granted, the Indemnitors are likely to sell, transfer, dispose, lien, secure, or otherwise encumber their assets from being used to discharge the Indemnitors' obligations to exonerate and indemnify F & D, all to F & D's irreparable

KERR, RUSSELL
AND WEBER, PLC

harm.

28.   F & D lacks an adequate remedy at law to secure its rights of reimbursement and exoneration from the Indemnitors and is without a plain, speedy remedy at law and will be irreparably and permanently injured unless this court grants the injunctive and equitable relief requested herein.

WHEREFORE, Fidelity and Deposit Company of Maryland prays this court enter an order providing judgment against A-Mac, Andrew McLemore and Dorothy McLemore, jointly and severally, in an amount in excess of $880,000.00, together with costs, expenses and attorneys' fees and require all of the foregoing Defendants to post collateral in the amount of $880,000.00 or in an amount sufficient to secure F & D from any losses (which have been incurred or which may be incurred), including an amount sufficient to reimburse F & D for interest, costs and attorneys fees, together with such other relief as this court deems just and equitable.

### COUNT III
### (SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT)

29.   F & D incorporates by reference the common allegations set forth in paragraphs 1 through 18 as though fully set forth here.

30.   F & D has demanded that the Indemnitors indemnify and hold F & D harmless from any and all costs, losses and expenses resulting from the issuance of Bonds for the Project.  To date, the Indemnitors have failed to indemnify and hold F & D harmless.

31.   F & D lacks an adequate remedy at law and will suffer irreparable harm if the relief sought is not granted.

WHEREFORE, Fidelity and Deposit Company of Maryland prays this court enter

KERR, RUSSELL
AND WEBER, PLC

judgment in its favor and against A-Mac, Andrew McLemore and Dorothy McLemore, jointly and severally, in an amount in excess of $880,000.00, together with interest, costs and attorneys fees and further enter an order requiring the Indemnitors to post collateral in the initial amount of $880,000.00 or in an amount sufficient to secure F & D from any losses, together with such other relief as this court deems just and equitable.

### COUNT IV
### INJUNCTIVE RELIEF

32.   F & D incorporates by reference the common allegations set forth in paragraphs 1 through 18 as though fully set forth here.

33.   By the express provisions of the Indemnity Agreement and by virtue of the equitable doctrines of exoneration and reimbursement, F & D is entitled to have the Indemnitors place funds or other security with it upon demand that are sufficient to cover the above-described Bond losses and expenses, as well as to provide protection against potential losses.  (Exhibit A).

34.   Unless injunctive relief is granted, F & D will suffer immediate and irreparable harm in that the Defendants' past conduct demonstrates a willingness and likelihood on their part to avoid their obligations.

35.   Unless injunctive relief is granted, F & D will not be adequately secured for its obligations and/or losses under the Bonds.

WHEREFORE, F & D respectfully requests that this court grant the following temporary relief and thereafter the preliminary relief requested below:

KERR, RUSSELL
AND WEBER, PLC

## Preliminary Injunction

1.  An Order requiring Defendants to provide F & D a full and complete accounting of all assets owned by them or in which they have an interest;

2.  An Order requiring Defendants to allow F & D and/or its agents full and complete access to all financial books, records and accounts maintained by them;

3.  An Order requiring Defendants to place with F & D the initial amount of $880,000.00 in funds by money, property, or liens or security interests in property, and any additional amount as determined by F & D as security for its obligations and losses under the Bonds;

4.  An Order granting a lien upon all assets and property, including, realty and personalty owned by Defendants and property in which any one or more of the Defendants have an interest, including, without limitation, all interests in bonds, securities, companies, and other investments. F & D requests that such lien remain in effect unless and until F & D shall receive the funds requested in paragraph 3 above;

5.  An Order requiring Defendants to indemnify, exonerate and reimburse F & D for all liabilities, losses and expenses incurred by F & D as a result of F & D having executed the Bonds;

6.  An Order granting F & D judgment for all costs, including attorneys and consultant fees incurred as a result of having issued the Bonds, together with an award of interest on all amounts paid by F & D to date;

7.  Such other relief as this court deems just and equitable.

## COUNT V
## (DECLARATORY JUDGMENT)

36.  F & D incorporates by reference the common allegations set forth in paragraphs 1 through 18 as though fully set forth here.

37.  Indemnitors are obligated to indemnify F & D from all losses, costs, damages, attorneys fees, disbursements and expenses of every nature pursuant to the Indemnity Agreement and to post collateral to cover F & D's bond exposure and future

KERR, RUSSELL
AND WEBER, PLC

{22395\313\DT080400.DOC;1}                    9

expenses.

38.  Under the Indemnity Agreement, F & D is entitled to settle or compromise any claim, liability, demand, suit or judgment on any Bond issued on behalf of A-Mac and such settlement or compromise shall be binding upon the Indemnitors.  Any vouchers or other evidence of payment by F & D is prima facie evidence of the fact and amount of liability of the Indemnitors.  (Exhibit A).

39.  The Indemnitors have breached their obligations under the GAI by failing and refusing to indemnify and hold F & D harmless from A-Mac's defaults and failing to reimburse F & D and post collateral.

40.    28 U.S.C. §2201 provides that the court may make binding declarations of rights in cases of actual controversy.

41.  The instant cause involves an actual controversy regarding the obligations of the Defendants under the Indemnity Agreement and it is thus appropriate that this court issue a declaratory judgment regarding the parties' respective rights and obligations under the Indemnity Agreement and because a binding declaration by this court as to each party's rights and obligation under the Indemnity Agreement would serve to terminate any question of who is obligated to indemnify F & D.

WHEREFORE, Fidelity and Deposit Company of Maryland respectfully requests that this court grant the following relief:

A.    Enter an order declaring that Defendants A-Mac, Andrew McLemore and Dorothy McLemore, jointly and severally, are liable to F & D under the Indemnity Agreement for all losses F & D incurs or has incurred as a result of the issuance of the Bonds for A-Mac;

B.    Enter an order declaring that pursuant to the terms of the Indemnity Agreement, F & D has the following rights:

1.   F & D has the right to settle or compromise any claim, liability, demand, suit or judgment upon the Bonds at issue and such settlement or compromise shall be binding on the Indemnitors. The vouchers or other evidence of payment shall be prima facie evidence of the fact and amount of the Indemnitors' liability;

2.   The Indemnitors are obligated to reimburse F & D a sum in excess of $880,000.00, together with all interest, costs and attorneys fees and consultant fees incurred by F & D to date in connection with the Bonds;

3.   The Indemnitors are obligated to post collateral in the above amount, $880,000.00.

**KERR, RUSSELL AND WEBER, PLC**

By: _Mark M. Cunningham_

Mark M. Cunningham (B38408)
Attorneys for Plaintiff
500 Woodward Ave., Ste. 2500
Detroit, MI 48226
(313) 961-0200

Dated: July 16, 2004



## Agreement of Indemnity

1　This Agreement of Indemnity, made and entered into this  21st
2　　　　　　　　　19 94  by A-MC SIGNS & BUILDING CO., INC.
3　15780 Schaefer  Detroit, MI  48227
4　Andrew G. & Dorothy McLemore, both of 3543 West Outer Drive  Detroit, MI  48235

5

6
7　FIDELITY AND DEPOSIT COMPANY OF MARYLAND, 300 Saint Paul Place, P.O. Box 1227, Baltimore, Maryland 21203, its suc-
8　cessors and assigns hereinafter called the Surety,

### WITNESSETH:

9　　WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own
10　name solely or as co-adventurer with others, may desire or be required to give or procure certain surety bonds, undertakings
11　or instruments of guarantee, and to renew, or continue or substitute from time to time the same or other bonds, undertakings
12　or instruments of guarantee with the same or different penalties, under conditions, may one or more of which said hereinafter
13　called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from cancelling said Bonds; and

14　　WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement
15　of Indemnity be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or
16　procure to be executed, said Bonds on behalf of the Contractor; and

17　　WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the
18　Surety's refraining from cancelling said Bonds.

19　　NOW, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors,
20　administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, as follows:

### PREMIUMS

21　　FIRST: The Contractor and Indemnitors will pay to the Surety in each manner as may be agreed upon all premiums and
22　charges of the Surety for the Bonds in accordance with its rate filings, in manual of rates, or as otherwise agreed upon, until
23　the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and
24　all liability by reason thereof.

### INDEMNITY

25　　SECOND: The Contractor and Indemnitors shall covenant, indemnify, and keep indemnified the Surety from and against
26　any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs
27　and counsel fees) and from and against any and all losses and/or expenses which the Surety may sustain and incur: (1)
28　By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor of Indem-
29　nitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and
30　conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indem-
31　nitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.
32　Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the
33　Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and
34　the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in
35　good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums
36　and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability,
37　necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be
38　prima facie evidence of the fact and amount of the liability to the Surety.

### ASSIGNMENT

39　　THIRD: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign,
40　and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and
41　any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment
42　in the time of each contract to become effective as of the date of this said covering each contract, but only in the event of
43　(1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said bonds; or
44　(2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default or disbursement each other
45　indemnitness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors, or of the
46　appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not;
47　or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools of material
48　referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, insolvency,
49　being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and
50　growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds;
51　(b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which
52　are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds
53　or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which
54　may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights,
55　title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred
56　to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of action, claims and demands
57　whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or the person
58　furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with
59　or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer;
60　or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on
61　account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the
62　Contractor has an interest.

Clause-Ind, 14-84

FIDELITY & DEPOSIT

## TRUST FUND

## UNIFORM COMMERCIAL CODE

## TAKEOVER

## CHANGES

## ADVANCES

## BOOKS AND RECORDS

## DECLINE EXECUTION

## NOTICE OF EXECUTION

## HOMESTEAD

## SETTLEMENTS

FROM :FIDELITY & DEPOSIT    Case 2:04-cv-70592-PZ-RSW    Doc # 2-9 Filed 07/16/04    Pg 23 of 23    Pg ID 65    #930 P.04/05

. FIDELITY & DEPOSIT

**SURETIES**

137 **FOURTEENTH:** In the event the Surety procures the execution of the Bonds by other sureties or executes the Bonds with
133 co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement
134 shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interest may appear.

**SUITS**

135 **FIFTEENTH:** Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery
136 of judgment upon any cause of action shall not prejudice or bar the bringing of other suits, upon other causes of action, whether
137 theretofore or thereafter arising.

**OTHER INDEMNITY**

138 **SIXTEENTH:** That the Contractor and the Indemnitors shall continue to remain bound under the terms of this
139 Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or
140 knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral
141 in connection with the execution of procurement of said Bonds, from the Contractor or Indemnitors or others, it
142 being separately underwood and agreed by the Contractor and the Indemnitors that, any and all other rights which
143 the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or
144 additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded
145 the Surety under this Agreement.

**INVALIDITY**

146 **SEVENTEENTH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the
147 execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall
148 not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the
149 same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent
150 as if such failure, defect or invalidity had not existed, it is understood and agreed by the Contractor and Indemnitors
151 that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not
152 in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor
153 and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

**ATTORNEY IN FACT**

154 **EIGHTEENTH:** The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate
155 the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Con-
156 tractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the
157 Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or
158 papers deemed necessary and proper by the Surety in order to give full effect and carry to the intent and meaning
159 of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions
160 of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and
161 done by the Surety as such attorney-in-fact.

**TERMINATION**

162 **NINETEENTH:** This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written
163 notice sent by registered mail to the Surety at its home office at 300 Saint Paul Place, Baltimore, Maryland 21202,
164 Attention: Vice President, Surety Department, but any such notice of termination shall not operate to modify, bar, or discharge the
165 Contractor or the Indemnitors as to the Bonds that may have been theretofore executed.

166 **TWENTIETH:** This Agreement may not be changed or modified orally. No change or modification shall be effective
167 unless made by written endorsement, executed to form a part hereof.

168 **TWENTY-FIRST:** _____

169 IN WITNESS WHEREOF, we have signed and sealed the day and year first above written.

ATTEST OR WITNESS:

*Dorothy Milazzo* – Secretary

*Kevin C. Paul*

*Mary Green*

A-MEC SALES & BUILDERS CO., INC.
*(Full Name and Address of Contractor)*

15780 Schaefer / Detroit, MI    48227

BY: _____ (SEAL)
Anthony G. Milazzo – President

X _____ (SEAL)
Anthony G. Milazzo – Detroit, Michigan

*Dorothy Milazzo* _____ (SEAL)
Dorothy Milazzo – Detroit, Michigan

_____ (SEAL)
*(Full Name and Address of Indemnitor)*

_____ (SEAL)
*(Full Name and Address of Indemnitor)*

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

By _____ (SEAL)
*Attorney Secretary*                          *Vice-President*

**For Acknowledgment of Contractor's Signature**

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

On this _____ day of _____ 19___, before me, the subscriber, personally appeared _____

### PARTNERSHIP ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

### CORPORATE ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

On this 21st day of November 19 94, before me, the subscriber, personally appeared Andrew G. McLeod
the city of Detroit, Michigan
A-Mac Sales & Milling Co., Inc.

Dorothy McLeod

Lauren Denise Miles

**For Acknowledgment of Indemnitor's Signature**

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

On this 21st day of November 19 94, before me, the subscriber, personally appeared Andrew G. & Dorothy McLeod

Lauren Denise Miles

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

On this _____ day of _____ 19___, before me, the subscriber, personally appeared

### PARTNERSHIP ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

On this _____ day of _____ 19___, before me, personally appeared

### CORPORATE ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS:

On this _____ day of _____ 19___, before me, the subscriber, personally appeared



8:04-cv-72648-LPZ-RSW   Doc # 1   Filed 07/16/04   Pg 18 of 23   Pg ID 18



CITY OF DETROIT
HOUSING COMMISSION

1301 E. JEFFERSON
DETROIT, MICHIGAN 48207

September 15, 2000

**Via facsimile transmission to (313) 965-1508
and Certified Mail No. _____, Return Receipt Requested**

Andrew G. McLemore, Sr.
A-MAC Sales & Builders Company, Inc.
1528 Woodward
Detroit, MI 48226

Re:     Detroit Housing Commission ("DHC") Contract No. 1653 (the "Contract")
         Unit Reconfiguration and Renovations at Jeffries West Apartments, Bldg. 502 (the "Project")

Dear Mr. McLemore:

   This letter, drafted in accordance with Article 14 of the DHC General Conditions for the above referenced construction contract, constitutes formal written declaration and Notice of DHC's termination of the above referenced Contract. As stated in our letter to you dated August 21, 2000, said termination is for cause, due to the failure of A-Mac Sales & Builders Co., Inc. ("A-Mac") to complete contract work within the corresponding contract time specified for completion of performance.

   The effective date of said termination is September 8, 2000, the date specified in our letter dated August 21, 2000 by which we gave you written notice of DHC's intent to terminate the Contract absent timely submission of an acceptable Plan for resumption of work and completion of the Project.   We have reviewed your letter dated September 7, 2000, along with the enclosures thereto, and find it unacceptable and insufficient as a basis upon which we can justify postponing or setting aside our decision to proceed with contract termination. It does not give DHC reasonable and credible assurance that A-Mac has the present capacity and intent to complete the Project.

   By separate letter dated this same date, a copy of which is enclosed, we are advising the Surety that issued Performance and Payment Bond Number 6117787 for this Project, Fidelity & Deposit Company of Maryland ("Fidelity"), of our action. We are demanding that Fidelity honor its obligation under its Performance Bond and proceed promptly to prosecute the work to completion. Please note that the deadline established for submission by Fidelity of an acceptable Plan for completion of the Project is October 2, 2000, calculated with reference to §14.3.1.1 of the DHC General Conditions of the Contract.

DENNIS W. ARCHER, MAYOR

Andrew G. McLemore, Sr.
September 15, 2000
Page 2

By this termination letter A-Mac is hereby instructed to immediately cease all work on the Project and to instruct all subcontractors currently working on the Project to do the same pending receipt of further instruction from Fidelity and/or DHC with respect to resumption or continuation of performance.

Please be advised that further instructions from DHC with respect to termination and winding up of contractor activities at the site will be forthcoming once DHC has received and reviewed Fidelity's Plan for Project completion, for which, as indicated above, the deadline for submission is October 2, 2000. During this interim period, should issues or matters com up which require further discussion, please direct all communications to DHC through the office of DHC's General Counsel, Frank E. Barbee, telephone number (313) 877-8810.

Sincerely,
**DETROIT HOUSING COMMISSION**

John Nelson Jr. / K.S.

John Nelson, Jr.
Executive Director

Enclosure

cc.   Frank Barbee
     Jill Steen
     Mark Cunningham, Esq.
     David Guest

G:\LEGAL\BOB\CONTRACT\AmacDH2ltr.wpd



CITY OF DETROIT
HOUSING COMMISSION

1301 E. JEFFERSON
DETROIT, MICHIGAN 48207

September 15, 2000

**Via Facsimile to 1-800-329-6112 and U.S. Mail**

David Guest
Fidelity & Deposit Company of Maryland
Midwest Regional Claim Office
8888 Keystone Crossing, Suite 610
Indianapolis, IN 46240

Re:  Fidelity & Deposit Company of Maryland ("Fidelity") Claim No. 044-003693
     Detroit Housing Commission ("DHC") Contract #1653
     Jeffries West Apartments, Bldg 502 - Unit Reconfiguration and Renovations (the "Project")
     Principal: A-Mac Sales & Builders Co., Inc. ("A-Mac")

Dear Mr. Guest:

This letter is directed to Fidelity as the Surety which issued Performance and Payment Bond No. 6117787 covering the above referenced Project and is intended to constitute DHC's formal written demand, as contemplated in §14.3 of the DHC General Conditions of the above referenced Contract, that Fidelity perform its obligations under said Bond and proceed to complete the Project.

By letter dated August 21, 2000, copies of which were sent both to you and to Fidelity's counsel of record, Attorney Mark Cunningham, DHC gave A-Mac Notice of Default and Notice of DHC's Intent to Terminate the Contract, absent timely submission of reasonable, credible assurance of Project completion.  Please be advised that DHC has received and reviewed A-Mac's "Plan of Assurance" for completion of the Project, presented by letter dated September 7, 2000 from Andrew G. McLemore, Sr., and found it to be unacceptable.

Included among its several deficiencies are the following: it lacks an accounting of specific amounts claimed by subcontractors and suppliers as due and owing for completed work; it fails to provide credible, unqualified commitments from critical subcontractors indicating their willingness to return to work and proceed expeditiously to complete their portions of the work; it does not include "critical path" information to explain the sequencing of subcontractor work so that completion can reasonably occur within the time period projected for completion. Most importantly, A-Mac's "Plan" is not accompanied by anything from Fidelity to indicate its concurrence that the Plan is reasonable or a commitment to see the Project thru to completion.

DENNIS W. ARCHER, MAYOR

Mark Cunningham
September 15, 2000
Page 2

---

Enclosed please find a copy of our letter to Mr. McLemore, dated this same date, notifying him of Contract termination for cause. We direct your attention to Paragraph C of Fidelity's Performance Bond for the Project, which expressly references and incorporates Article 14 of the DHC General Conditions as binding on Fidelity. We hereby make demand that Fidelity proceed promptly, in accordance with §14.2.2 of the General Conditions, with performance and prosecution of the work to completion. We look to Fidelity to provide, on or before October 2, 2000, a statement of its intention to do so, along with its written Plan for completion of the Project. See specifically §14.3.1.1 of the General Conditions.

We look forward to receiving and reviewing Fidelity's Plan for completion of the Project. DHC's preference is to work with Fidelity to accomplish what we believe to be in our mutual best interest. Be reminded, however, that should Fidelity fail to timely provide us with an acceptable Plan or fail to proceed promptly to perform its obligations under the Performance Bond, DHC has the right to declare Fidelity in default and reserves the right to assert and pursue any and all rights remedies set forth in the Contract and afforded to DHC as a consequence thereof.

Should issues or matters come up which require further discussion, feel free to call the office of DHC's General Counsel, Frank E. Barbee, telephone number (313) 877-8810, to speak with him or with Attorney Robert Koenig of his staff.

Very truly yours,
DETROIT HOUSING COMMISSION

John Nelson Jr. / K.S.

John Nelson, Jr.
Executive Director

Enclosure

cc.    Frank Barbee
       Jill Steen
       Andrew G. McLemore, Sr.
       Mark Cunningham

JS 44 11/99 **CIVIL COVER SHEET**  COUNTY IN WHICH THIS ACTION AROSE: Wayne

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I. (a) PLAINTIFFS**
Fidelity and Deposit Company of Maryland in its own right and as subrogee and assignee of various obligees and claimants

**DEFENDANTS**
A-Mac Sales and Builders Co., Inc.,
Andrew G. McLemore and Dorothy McLemore

# 04 - 72643

(b) County of Residence of First Listed Plaintiff    Maryland

County of Residence of First Listed Defendant    Wayne County, MI
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

(C) Attorneys (Firm Name, Address, and Telephone Number)
Mark M. Cunningham (P38408)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Ave., Ste. 2500
Detroit, MI  48226
(313)961-0200

Attorneys (If Known)

LAWRENCE P. ZATKOFF.

MAGISTRATE JUDGE R. STEVEN WHALEN

**II. BASIS OF JURISDICTION**   (Place An "X" In One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place An "X" In One Box For One Box For Defendant)
(For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | Of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☒ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | | | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | Act | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | & Disclosure Act | | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | or Defendant | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS — Third Party | |
| | | ☐ 555 Prison Condition | Security Act | 26 USC 7609 | |

**V. ORIGIN**   (Place An "X" In One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**   (Cite The Us Civil Statute Under Which You Are Filing And Write A Brief Statement Of Cause.
Do Not Cite Jurisdictional Statues Unless Diversity)

28 U.S.C. §1332;  Breach of Contract - Indemnity Agreement

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $880,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE   7/16/04

SIGNATURE OF ATTORNEY OF RECORD
Mark M. Cunningham

**URSUANT TO LOCAL RULE 83.11**

1.       Is this a case that has been previously dismissed?     ☐ Yes  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.       Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)    ☐ Yes  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :